UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GALE A. CRAWFORD, )<br>  )<br>    *Plaintiff* )<br>  )<br>v. )<br>  )<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>  )<br>    *Defendant* ) | Civil No. 09-50-P-S |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner, who deemed the plaintiff disabled by a combination of impairments from January 26, 2003, through February 1, 2008, supportably found sufficient medical improvement to judge her no longer disabled as of February 2, 2008. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs*., 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that at all relevant times, the plaintiff had severe impairments of status post compression of the left ulnar nerve at the ulnar groove, axonal damage, status post rotator cuff tears in the shoulders and status post

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 9, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

knee surgeries, Finding 3, Record at 13;[2] that, from January 26, 2003, through February 1, 2008, she had the residual functional capacity ("RFC") to perform sedentary work, except that she could lift less than 10 pounds, required a sit/stand option, could sit in a normal chair with a back for 10 to 20 minutes at a time and then needed to move around, could stand for 15 to 20 minutes at a time, and experienced numbness and tingling in her hands, with weakness that made her drop things on occasion, Finding 5, *id*. at 14; that, from January 26, 2003, through February 1, 2008, considering her age (41 years old, defined as a younger individual, as of the alleged disability onset date), education (at least high school), work experience (no transferable job skills), and RFC, there were no jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 15; that she therefore was under a disability from January 26, 2003, through February 1, 2008, Finding 11, *id*. at 16; that medical improvement occurred as of February 2, 2008, the date her disability ended, Finding 12, *id*.; that, beginning on February 2, 2008, she had the RFC to perform sedentary work, except that she could lift less than 10 pounds, required a sit/stand option, could sit in a normal chair with a back for 10 to 20 minutes at a time and then needed to move around, and could stand for 15 to 20 minutes at a time, Finding 14, *id*. at 16-17; that her medical improvement was related to her ability to work, Finding 15, *id*. at 18; that, beginning on February 2, 2008, considering her age (age category unchanged), education, work experience, and RFC, she was able to perform a significant number of jobs in the national economy, Findings 16, 18-19, *id*.; and that her disability therefore ended on February 2, 2008, Finding 20, *id*. at 19. On review, the Decision Review Board affirmed the

---

[2] "Ulnar" means "[r]elating to the ulna[,]" which is "[t]he medial and larger of the two bones of the forearm[.]" Stedman's Medical Dictionary ("Stedman's") 1905 (27th ed. 2000). "Axonal" means "[p]ertaining to an axon[,]" which is "[t]he single process of a nerve cell that under normal conditions conducts nervous impulses away from the cell body and its remaining processes (dendrites)." *Id*. at 177.

decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).[3]

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The plaintiff takes issue with the administrative law judge's finding of medical improvement. *See generally* Statement of Errors. The commissioner's regulations provide, in relevant part:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)[.]

20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1594(b)(1)). For a medical improvement to result in termination of disability benefits, it must be related to a claimant's ability to do work, that is, accompanied by an increase in his or her functional capacity to do basic work activities, and the commissioner must, in most instances, show that, taking into account the new RFC, the claimant is able to engage in substantial gainful activity. *See* 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1594(b)(2)-(5)).

---

[3] The plaintiff applied for Supplemental Security Income ("SSI"), as well as SSD, benefits. *See* Record at 9. However, she states that subsequent to the issuance of the administrative law judge's adverse decision, she withdrew her SSI application. *See* Statement of Errors and Fact Sheet ("Statement of Errors") (Docket No. 9) at 1 n.1. Thus, this appeal concerns SSD benefits only.

The plaintiff contends that neither the finding of medical improvement nor that of post-improvement RFC is supported by substantial evidence, requiring reversal and remand. *See* Statement of Errors at 3-5. I agree, and recommend that the court find reversal and remand warranted on those bases.

## I. Discussion

The administrative law judge explained her finding of medical improvement as follows: "According to the objective medical evidence of record offered in support of this application, by February 2, 2008 the [plaintiff's] symptoms had stabilized." Record at 16. She found a post-improvement RFC identical to that found for the plaintiff's period of disability but for omission of the limitation, "[s]he experiences numbness and tingling in her hands, with weakness that makes her drop things on occasion." *Compare* Finding 5, *id*. at 14 *with* Finding 14, *id*. at 16-17. She explained:

> Although [the plaintiff] testified to an extremely limited ability to use her upper extremities, treatment notes from February 2008 reveal she was able to go snowmobiling for a "long ride." The claimant's allegations are less credible considering she is capable of controlling a snowmobile with her upper extremities. It is for these reasons the undersigned Administrative Law Judge finds the claimant not fully credible.
>
> As stated above, the [plaintiff] has a complicated medical history, which required numerous surgical interventions. However, by February 1, 2008 the [plaintiff's] ulnar nerve and axonal damage symptoms had resolved and she no longer required manipulation difficulties [sic]. Specifically, Dr. Frank Goudreau's most recent physical examination in February 2008 revealed negative Tinel's and Phanel's, without considerable weakness and only mild pain to palpation through the flexor muscle mass of the forearm. She denied any paresthesias, swelling, redness or bruising in either hand. Dr. Goudreau's treatment notes indicate that although the claimant reported elbow pain, she informed Dr. Goudreau the pain began "after a long snowmobile" ride.

*Id*. at 17-18.[4]  She noted that she had accorded substantial weight to the findings of Disability Determination Services ("DDS") nonexamining consultants in determining the plaintiff's post-improvement RFC.  *See id*. at 18.  She concluded: "The undersigned finds that beginning on February 2, 2008 the [plaintiff's] ability to handle and manipulate objects was no longer impaired." *Id*.

While the administrative law judge purported to give substantial weight to the findings of DDS nonexamining consultants, no such consultant was asked to evaluate whether the plaintiff had experienced "medical improvement" and, if so, whether and how it had impacted her RFC. The only DDS physical RFC opinion of record is that of Donald Trumbull, which addressed the plaintiff's condition as of July 5, 2007, *see id*. at 549-56, the time frame during which the administrative law judge found her to have been disabled.

As the plaintiff suggests, *see* Statement of Errors at 4-5, it is unclear from the raw medical evidence that she experienced medical improvement related to her ability to work.  It is true that, on February 8, 2008, Dr. Goudreau noted that she denied "any specific paresthesias in her bilateral hands" or any swelling, redness, or bruising.  Record at  684.  In addition, on examination that day, Dr. Goudreau found (i) negative Tinel and Phalen signs at the plaintiff's right upper extremity, (ii) no considerable weakness in abduction of the digits, (iii) no obvious subluxation of the ulnar nerve, and (iv) only a mildly positive Tinel's sign at the ulnar nerve in the right elbow.  *See id*.[5]  Nonetheless, he also noted weakness in the plaintiff's pinch and grip

---

[4] A "Tinel sign" is "a sensation of tingling, or of 'pins and needles,' felt at the lesion site or more distally along the course of a nerve when the latter is percussed; indicates a partial lesion or early regeneration in the nerve[.]" Stedman's at 1640.  A "Phalen maneuver" is a maneuver "in which the wrist is maintained in volar flexion; paresthesia occurring in the distribution of the median nerve within 60 sec[onds] may be indicative of carpal tunnel syndrome[.]"  *Id*. at 1061.  "Paresthesia" is "[a]n abnormal sensation, such as of burning, pricking, tickling, or tingling."  *Id*. at 1316.

[5] "Subluxation" is "[a]n incomplete luxation or dislocation; though a relationship is altered, contact between joint surfaces remains."  Stedman's at 1716.

strength and diagnosed her with bilateral upper extremity weakness, multiple medical concerns including, but not limited to, continued neuropathy/paresthesias of the bilateral upper extremities, right elbow medial epicondylitis, and right mild cubital tunnel syndrome. *See id.* at 684-85.[6] He informed her of home occupational therapy and modalities "to improve her strength and ROM [range of motion]" and advised her to "[r]efrain from aggressive activities." *Id.* at 685.[7]

In addition, the plaintiff reported elbow, shoulder, or hand problems to her treating practitioners during other visits in late 2007 and early 2008. On January 29, 2008, she complained to Christopher D. Duncan, MS, PA-C, of "a week long history of pain/burning sensation localized to her right elbow/trapezius region after a long drive with her mother-in-law." *Id.* at 686. She complained to Dr. Goudreau on January 8, 2008, that "over the past 6 to 8 months she has had increasing right shoulder pain[,]" *id.* at 688, and on October 4, 2007, that she had "an approximate two week history of right thumb pain, numbness and stiffness[,]" perhaps

---

[6] "Neuropathy" is "a disease involving the cranial nerves or the peripheral or autonomic nervous system." Stedman's at 1211. "Epicondylitis" is "[i]nflammation of an epicondyle[,]" which is "[a] projection from a long bone near the articular extremity above or upon the condyle." *Id.* at 603. A "condyle" is "[a] rounded articular surface at the extremity of a bone." *Id.* at 397. "Cubital tunnel syndrome" is "a group of symptoms that develop from compression of the ulnar nerve within the cubital tunnel at the elbow; can include paresthesia into the 4th and 5th digits and weakness of the intrinsic muscles of the hand." *Id.* at 1751.

[7] Dr. Goudreau also stated at the bottom of his February 8, 2008, progress note: "The patient will follow up if [there are] continued symptoms or increased difficulty." Record at 685. At oral argument, counsel for the commissioner contended that a notation that a claimant is to follow up on an "as needed basis" supports a finding that the claimant is no longer disabled, a point for which he cited *Stafford v. Barnhart*, 402 F. Supp.2d 717, 727-28 & n.14 (E.D. Tex. 2005). This argument founders for the simple reason that the administrative law judge did not rely on the nature of the treatment that Dr. Goudreau had prescribed in determining the plaintiff's disability to have ceased. *See* Record at 17-18; *see also, e.g., Federal Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397 (1974) ("[W]e cannot accept appellate counsel's *post hoc* rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.") (citations and internal quotation marks omitted); *Cagle v. Astrue,* 266 Fed. Appx. 788, 794 (10th Cir. 2008) (rejecting commissioner's "impermissible attempt to provide a *post hoc* rationale in support of the ALJ's decision"). Furthermore, *Stafford* is distinguishable in that it was not a medical improvement case, and the court did not find the treating physician's conservative care, standing alone, dispositive of non-disability. *See Stafford*, 402 F. Supp.2d at 727-28 & n.14. Rather, the court noted that the treating physician's progress notes reflecting conservative care supported the administrative law judge's interpretation of that physician's disability opinion as suggesting that the claimant could perform certain gainful employment if available. *See id.*

triggered by increased activity, *id*. at 693. Dr. Goudreau found positive Tinel and Phalen signs at her right thumb and swelling at the joint. *See id*.

On the face of the raw medical evidence, the administrative law judge's finding that, as of February 1, 2008, the plaintiff's "ulnar nerve and axonal damage symptoms had resolved[,]" *id*. at 17, cannot be discerned to be supported by substantial evidence.

The related post-improvement RFC finding, that the plaintiff's ability to handle and manipulate objects no longer was impaired as of February 1, 2008, *see id*. at 18, appears equally unsupported. As the plaintiff suggests, *see* Statement of Errors at 3-4, that finding evidently is rooted in the administrative law judge's observation that she was "capable of controlling a snowmobile with her upper extremities[,]" Record at 17. However, the progress note on which the administrative law judge relied for that proposition sheds no light on whether the plaintiff was driving or was a passenger. *See id*. at 684-85. In addition, while the administrative law judge asked the plaintiff at hearing whether she had gone snowmobiling in prior winters, she did not query whether she was driving the snowmobile. *See id*. at 60. She merely assumed that she had.[8]

Beyond this, Dr. Goudreau assessed the plaintiff as of February 8, 2008, with weakness in pinch and grip strength, ongoing bilateral upper extremity weakness, and continued neuropathy/paresthesias of the bilateral upper extremities. *See id*. at 684-85. This evidence suggests that numbness, tingling, and weakness of the upper extremities, which the

---

[8] Moreover, the plaintiff's complaints of aggravated symptomatology with increased activity such as long car rides and snowmobiling would seem to support, rather than cut against, a finding that she had limitations in the functional use of her upper extremities.

administrative law judge found caused functional restrictions prior to February 2, 2008, persisted at some level beyond that date.[9]

In the circumstances, reversal and remand are required for a reexamination of whether the plaintiff experienced medical improvement related to work and, if so, for a redetermination of her post-improvement RFC and the question of whether, taking that RFC into consideration, she was able to perform work existing in significant numbers in the national economy.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[9] The record contains other support for a finding of ongoing functional restriction. The plaintiff's symptoms arose, in part, from a work injury she suffered on January 23, 2003. *See* Record at 356. On that day, while she was employed as a certified nursing assistant, she was assisting an overweight patient to use the commode when the patient suddenly fell backward onto the plaintiff's hands and arms. *See id*. at 356, 360, 588. Peter K. Esponnette, M.D., an independent medical examiner hired in connection with a workers' compensation case stemming from that incident, rendered an opinion on July 17, 2006, that, after reaching maximum medical improvement, the plaintiff had a 10 percent permanent impairment of the right upper extremity and a 15 percent permanent impairment of the left upper extremity. *See id*. at 362.

8